## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN BAYLIS,

                Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

Civil Action

No.  09-2217

### MEMORANDUM

Plaintiff Steven Baylis seeks a judgment reversing or vacating the Social Security Administration's ("SSA") denial of his application for Disability Insurance Benefits and Supplemental Security Income.  Magistrate Judge Caracappa filed a Report and Recommendation ("R&R") that recommended affirming the SSA's decision.  In a memorandum opinion dated August 9, 2010, this court vacated the SSA's decision and remanded the case for further consideration.  Before the court now is defendant's Rule 59(e) motion to alter or amend the judgment.  For the reasons that follow, the court will vacate its prior order, adopt the R&R, and affirm the SSA's decision.

## I. Background

Plaintiff Baylis made three objections to the R&R, but this court did not address those objections in its previous memorandum opinion because the SSA's decision was vacated on alternate, independent grounds. Because resolving defendant's Rule 59(e) motion will require the court to reconsider all three objections, the court will review the factual background of this case as it is relevant to those objections. A comprehensive account of the factual background to this action can be found in the R&R. *See* R&R at 5–23.

Baylis is a 57 year-old man born October 9, 1953. He completed ninth grade, and used to work as a transmission installer. On July 23, 2004, Baylis applied for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act (the "Act"). 42 U.S.C. § 1381 *et seq*. He claimed to have been disabled since January 30, 2002 because of problems with his shoulders, problems with his right thumb, and depression. Baylis's initial application for DIB on July 23, 2004 was denied. He filed another application for DIB on September 15, 2005. The second application was also denied, and Baylis requested a hearing before an Administrative Law Judge ("ALJ").

ALJ Lenzi heard Baylis's case on January 31, 2007. She too denied Baylis's application, finding that although Baylis "suffered from the severe impairments of right shoulder arthritis, right thumb arthritis, and right wrist ganglion cysts," he was not disabled because was capable of performing medium work with some limitations. R&R

at 2.  Baylis appealed, and on July 27, 2007 the Appeals Council granted his request for review.  *Id.*

The Appeals Council vacated the ALJ's decision and remanded the case for further consideration of the opinions of two doctors who evaluated Baylis, and of Baylis's subjective complaints.  *Id.*  ALJ Lenzi held a supplemental hearing on October 30, 2007, to consider these issues.  R&R at 2–3.  In addition, she also considered Baylis newly-filed application for Supplemental Security Income ("SSI").  The evidence presented at the hearings is summarized in the following paragraphs.

In November 2001, Baylis fell at his job as a transmission installer, and he went to Mercy Hospital of Philadelphia on November 14, 2001 with complaints of right shoulder pain.  Tr. 248.  On January 17, 2002, Dr. Menachem Meller performed surgery on Baylis to correct "[r]ight shoulder impingement," "AC joint arthritis," and a "possible rotator cuff tear."  Tr. 234.  In April 2002, Baylis returned for a post-operation visit and Dr. Meller noted that Baylis "was doing very, very well [with] almost no pain and excellent motion" after the operation, but that upon his return to work Baylis used his right upper extremity and now has "incapacitating pain" which prevents him from "elevating the arm, or using the arm [to] any significant degree."  Tr. 320.

In January 2006, Baylis visited Dr. Raul Yankelevich, who determined that Baylis could raise his right arm to 30 degrees forward and 35 degrees to the side.  Tr. 405.  He

3

also determined that Baylis had no range of motion in his MP joint,[1] and was unable to touch his thumb to his ring and small fingers.  *Id.*  Dr. Yankelevich also tested Baylis's grip strength and found that his grip was half as strong in his right, dominant, hand than it was in his left hand.  *Id.*

Less than two weeks later, on February 10, 2006, Dr. Oliver Finch performed a residual functional capacity ("RFC") assessment on Baylis.  Dr. Finch determined that Baylis could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for six hours in an eight-hour workday with normal breaks; sit for six hours in an eight-hour workday with normal breaks; and push and/or pull with his upper extremities only to a limited degree.  Tr. 407.  Dr. Finch found that Baylis's ability to reach overhead and handle objects with his right hand was limited.  Tr. 408.  Dr. Finch also determined that Baylis could frequently balance, stoop, kneel, and crouch, but that he could only occasionally climb or crawl.  *Id.*

On October 23, 2006, Baylis went to Dr. Onyeama Anakwe for pain in his neck, back, shoulder, right thumb, and left ring finger that was exacerbated by a car accident on September 9, 2006.  Tr. 425.  Dr. Anakwe examined Baylis and determined that his left shoulder had 80% of normal range of motion with mild tenderness; his right shoulder had 30% of normal range of motion with "very exquisite tenderness"; his right thumb was

---

[1] The MP, or metacarpophalangeal, joint refers to the joint between the hand and fingers. *Metacarpophalangeal*, <u>Stedman's Medical Dictionary</u> (27th ed.).

tender but had no swelling; and his left ring finger had full range of motion but was tender when extended or flexed.  Tr. 427.  Dr. Anakwe also noted that "Baylis had been relatively symptom free at the time of [the September 9, 2006 car accident]."  *Id.*  Baylis returned to Dr. Anakwe twelve times for follow-up evaluations from November 2006 to September 2007, and Dr. Anakwe rated Baylis's bilateral upper extremity muscle strength as 5/5 on ten occasions, and 4/5 on two occasions.  Tr. 439–451.  Dr. Anakwe also referred Baylis to Dr. Howard Hutt, who performed an MRI on Baylis's spine on April 20, 2007, and found disc desiccation and herniation.  See Tr. 435–438.

Having considered this medical evidence, the ALJ found in her written decision dated November 19, 2007, that Baylis was not disabled through December 31, 2006 and denied his application for SSI and DIB.  Tr. 39.  The Appeals Council denied Baylis's request for review on April 28, 2009, R&R at 3, making the ALJ's decision the final decision of the Commissioner, *see Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 353 n.1 (3d Cir. 2008).

On May 27, 2009, Baylis appealed the Commissioner's decision by filing a civil action in this court.  *See* Docket No. 3 (Request for Review).  The request was referred to Magistrate Judge Caracappa, who filed a R&R on August 9, 2010 that recommended affirming the ALJ's decision.  *See* Docket No. 12.  In his timely objection to the R&R, Baylis argued that (1) the R&R should have concluded that the ALJ's RFC assessment was inadequate because "it does not appropriately limit Mr. Baylis' use of his right hand

for fine manipulation, grasping, and handling"; (2) the R&R did not specifically discuss the fact that Baylis cannot reach above shoulder level with his right upper extremity; and (3) the R&R did not adequately address the fact that the ALJ ignored "nearly a year's worth of medical evidence that shows a deteriorating condition and speaks to the heart of the issues involved." Docket No. 13 at 1–3.

In a memorandum opinion dated August 9, 2010, this court ruled for Baylis on an independent ground not raised in his objections: namely, that because Baylis was 56 years old at the time, and therefore "a person of advanced age," his entitlement to benefits turned on whether his vocational skills were transferable. *See* Docket No. 14 at 7–8. The memorandum remanded the case to the finder of fact to determine whether his skills were in fact transferable and did not discuss Baylis's three objections to the R&R.

Two days later, on August 11, 2010, Commissioner Astrue ("Commissioner") filed a timely motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). He contends that this court made clear errors of law when it: (1) considered Baylis' age at the time of this court's decision instead of his age at the time of the Commissioner's decision; and (2) determined that Baylis' status as disabled turned on whether his skills were transferable. *See* Docket No. 16 at 1–4.

## II. Standard of Review

The ALJ's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" means "'such relevant evidence as a

reasonable mind might accept as adequate.'" *Capato ex rel. B.N.C. v. Commissioner of Social Sec.*, 631 F.3d 626, 629 (3d Cir. 2011) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  "'Where the ALJ's findings of fact are supported by substantial evidence, [federal courts] are bound by those findings, even if [that court] would have decided the factual inquiry differently.'" *Id.*  (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).  This court's role, then, is to determine whether there is substantial evidence supporting the ALJ's decision.  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  An ALJ's RFC findings must be accompanied by a "'clear and satisfactory explication of the basis on which it rests'" so that "'the [district] court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.'" *Fargnoli*, 247 F.3d at 41 (quoting *Cotter v. Harris*, 642 F.2d 700, 704–5 (3d Cir. 1981)).

A motion brought pursuant to Fed. R. Civ. P. 59(e) may be granted upon a showing of "(1) an intervening change in controlling law; (2) the  availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

## III. Discussion

The SSA evaluates disability claims under the Act in five steps, 20 C.F.R. § 404.1520, but only the fifth step is at issue in this action.  After the first four steps,

which generally assess the nature of the claimant's disabling condition and whether she

can perform her previous job,[2] at step five the SSA determines whether the claimant is

capable of performing other jobs that exist in significant numbers in the national economy

by considering claimant's: (1) residual functional capacity; (2) age; (3) education; and

(4) past work experience.  20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

These factors are then applied to a matrix of different permutations ("the GRID") to

determine whether the claimant is disabled. 20 C.F.R. § 404, Subpart P, Appendix 2.

Following the GRID is mandatory: once the ALJ has determined each of the four factors

for a claimant, the GRID "*direct[s]* a conclusion concerning a claimant's disability."

*Podedworny v. Harris*, 745 F.2d 210, 216 (3d Cir. 1984) (citing  20 C.F.R. § 404, Subpart

P, Appendix 2, § 200.00(a)) (emphasis in original).

A.  Rule 59(e) Motion

The Commissioner alleges that this court's August 9, 2010 memorandum decision

---

[2] Specifically, at step one the SSA considers whether the claimant is doing "substantial gainful activity;" if so, he is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  *Heckler v. Cambell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant satisfies this burden, the SSA then determines at step three whether the claimant's impairment is on a list of impairments that the SSA presumes render one disabled; if so, the claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on that list, the inquiry proceeds to step four and the SSA will determine whether the claimant has the residual functional capacity to perform his previous work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. If the claimant can still do their past relevant work, he is not disabled.

made two clear errors in its interpretation of step five: (1) an error of fact concerning Baylis' age category; and (2) an error of law concerning the importance of whether Baylis's skills were transferable.[3]

With respect to the first argument, this court previously held that Baylis "falls within the 'person of advanced age' category" because he was 56 years old at the time of this court's decision in August 2010.  Docket No. 14 at 7 (quoting 20 C.F.R. § 404.1563(e)).  The court now recognizes that this holding constituted a clear error of law: a plaintiff's age at the time of the district court's decision is not relevant to her classification under the guidelines.  Rather, the relevant age category is that which applies "during the period for which [the SSA] must determine if [the claimant is] disabled." 20 C.F.R. § 404.1563(b).  In the present case, that period began with the alleged onset of Baylis's disability, January 30, 2002, and ended when the Appeals Council denied review on April 28, 2009.  *See* 20 C.F.R. § 416.330(b) ("If a [claimant] first meet[s] all the requirements for eligibility after the period for which [her] application was in effect, [she] must file a new application for benefits."); *Poulos v. Comm'r of Social Security*, 474 F.3d 88, 91 (3d Cir. 2007) (using plaintiff's age "at the time of her hearing before the ALJ" at stage 5); *Newell v. Comm'r of Social Security*, 347 F.3d 541, 542 (3d Cir. 2003) (same); *Podedworny v. Harris*, 745 F.2d 210, 221 n.9 (3d Cir. 1984) (noting that "different rules

---

[3] The Commissioner styles his first claim as an "error of fact," but the thrust of the claim is that this court made a legal error by incorrectly calculating Baylis's age for the purposes of this review.  Docket No. 16 at 2.

within the grid would now apply in any new proceedings" when an appellant first fell into

an age category while the federal appeal was pending).

In this case, the ALJ's decision did not become final until the Appeals Council

denied Baylis's request for review on April 28, 2009.  Baylis was 54 years old at the time

and therefore fell into the "closely approaching advanced age" category,  20 C.F.R.

§ 404.1563(d), not the "advanced age" category, 20 C.F.R. § 404.1563(e).

The Commissioner's second argument is that this court incorrectly focused on

whether or not Baylis' skills were transferable.  If, as this court concluded last year,

Baylis were a "person of advanced age," then whether his skills were transferable would

have been dispositive.  *See* 20 C.F.R. §§ 404.202.02–03.  But if, as the court now

concludes, Baylis is a "person closely approaching advanced age," then under the GRID

he is not disabled irrespective of whether his skills are transferable.  *See* 20 C.F.R..

§§ 404.202.11–12.  Accordingly, this court's prior conclusion concerning the

transferability of Baylis' skills was incorrect.

B.  Plaintiff's Objections to the R&R

As noted above, this court's previous memorandum did not consider Baylis's three

objections to the R&R because the memorandum held that Baylis's age category was

dispositive.  Because that holding is reversed in this opinion, the court will now consider

each of Baylis's objections in full.

This court must make a "a de novo determination" of the objected-to findings of an

10

R&R.  28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72.  Baylis makes three objections

to the R&R: (1) that the R&R should not have concluded that the ALJ's RFC assessment

was adequate because the assessment "does not appropriately limit Mr. Baylis' use of his

right hand for fine manipulation, grasping, and handling"; (2) that the R&R did not

adequately address Baylis's inability to reach above the shoulder level with his right arm;

and (3) that the R&R did not discuss the fact that the ALJ ignored "nearly a year's worth

of medical evidence that shows a deteriorating condition and speaks to the heart of the

issues involved."  Document No. 13 at 1–3.  Each objection will now be considered in

turn.

       1.  <u>The RFC Assessment</u>

     Baylis argues in his first objection to the R&R that the ALJ's RFC assessment was

not supported by substantial evidence because it did not "appropriately limit Mr. Baylis'

use of his right hand for fine manipulation, grasping, and handling."  Baylis suggests that

once these limitations are taken into account, he should be limited to sedentary work.  *See*

Pl.'s Objections at 1–2.

     The court disagrees, and holds that the ALJ's determination concerning Baylis's

right hand was supported by substantial evidence.  On remand, the ALJ found that Baylis

can make "occasional to frequent use of the right upper extremity for fine manipulation,

grasping, and handling."  Tr. 32.  Baylis contends that the ALJ "completely ignored his

inability to move the MP joint of his right thumb and inability to touch his opposing ring

and little fingers," and "overlooked [both] his complaints of bilateral hand numbness and [his] greatly reduced grip strength in his right, dominant hand." Pl.'s Obj. at 2. He refers, presumably, to the notes of Dr. Yankelevich, which document inflexibility and reduced grip strength in his right hand, and to his own testimony. However, the ALJ adequately explained why she did not fully credit these two pieces of evidence.

With respect to Dr. Yankelevich's report dated January 30, 2006, the ALJ notes in her decision on November 19, 2007 that Dr. Yankelevich examined Baylis and found that "[Baylis's] range of motion is decreased, and that [Baylis] has reduced grip strength in his right hand." Tr. 33 (citing Tr. 405). But the ALJ found that Dr. Yankelevich's notes were called into question by the findings of two doctors. First, Dr. Anakwe's notes state that Baylis "had been relatively symptom free" when he was in the car accident on September 9, 2006. Tr. 68. Given that the accident occurred less than nine months after Dr. Yankelevich examined Baylis, ALJ Lenzi concluded that Baylis's right shoulder and right thumb must not have been as painful and symptomatic as Dr. Yankelevich's notes state they were. *Id.* Second, Dr. Finch completed a physical RFC assessment of Baylis less than two weeks after Dr. Yankelevich wrote his report, and Dr. Finch determined that Baylis was capable of performing medium exertional work.[4] Tr. 33 (citing Tr. 411). Dr.

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the SSA] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

Finch made his RFC determination after taking into account the notes of Dr. Yankelovich concerning Baylis's "[in]ability to touch the small fingers with the thumb" and reduced grip strength in his right hand. Tr. 411.

Furthermore, even if Dr. Yankelovich's findings were accurate on January 30, 2006, the reports of Drs. Finch and Anakwe demonstrate that Baylis's disability did not last for a year. Dr. Finch examined Baylis on February 10, 2006 and found him able to perform medium (and therefore also light) work, and Dr. Anakwe noted that Baylis was relatively symptom free on September 9, 2006. A claimant is not considered disabled unless the impairment "last[s] for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In sum, Dr. Finch's and Dr. Anakwe's reports contradicted Dr. Yankelovich's assessment and demonstrate that Baylis was not as symptomatic as Dr. Yankelovich's reports suggest.

With respect to Baylis's own testimony, the ALJ did not find Baylis to be a credible witness, and therefore disregarded his subjective complaints. She points to two pieces of evidence that support her determination. First, she points out that Baylis's claim that his right shoulder, right thumb, and right wrist have been continuously symptomatic since 2002 is contradicted by the notes of Dr. Anakwe. As previously discussed, Dr. Anakwe noted that Baylis was relatively symptom free in September 2006. Dr. Anakwe also tested Baylis's grip repeatedly between November 2006 and September 2007, and noted full or near-full grip each time. Second, the ALJ notes that Baylis misrepresented

the extent to which he performs light household chores.  During the first hearing, Baylis

said that his disabled wife was doing most of the household work.  The ALJ asked Baylis

how a disabled woman was capable of doing so much, and Baylis retracted his statement

and admitted to helping out around the house.  These two pieces of evidence, taken

together, are enough that a reasonable mind might doubt the truthfulness of Baylis's

testimony.  As the R&R points out, the ALJ may reject subjective complaints if she does

not find them credible.  *See Harkins v. Comm'r of Soc. Sec.*, 399 F. App'x 731, 735 (3d

Cir. 2010) (upholding the district court's determination that the ALJ did not err in

rejecting subjective complaints of pain where those complaints were contradicted by

medical evidence and claimant's ability to perform daily tasks).

The ALJ did not ignore evidence concerning Baylis's right hand.  Rather, she

resolved contradicting evidence in a manner unfavorable to Baylis.  Because her decision

was supported by substantial evidence, this court will affirm the ALJ's determination.

2.  The Right Upper Extremity Limitation

In his second objection to the R&R, Baylis challenges the ALJ's phrasing of a

question to a vocational expert ("VE") during the hearing.  The court holds that even if

the ALJ arguably misworded her question, the VE understood the question in the way that

Baylis wanted it to be phrased, and the ALJ was therefore entitled to rely upon the VE's

answer.

At step five, the Commissioner bears the burden of showing that "other jobs exist

in significant numbers in the national economy that the claimant could perform."

*Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008).  In order to make this

determination, the ALJ will often question a VE about the jobs available to a hypothetical

person who shares the claimant's relevant characteristics.  The VE's testimony is properly

used to support the ALJ's decision so long as the hypothetical posed by the ALJ to the VE

"accurately convey[s] to the vocational expert all of a claimant's credibly established

limitations."  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.  2005) (emphasis

removed and internal quotation marks omitted).

In this case, the ALJ's question to the VE was phrased as whether jobs were

available for someone who "*should* avoid reaching above shoulder level with the right

upper extremity."  Tr. 548 (emphasis added).  As Baylis notes, this question arguably

should not have used the word "should" because Baylis was in fact entirely incapable of

reaching above shoulder level with his right arm.  However, even if the question was not

optimally worded, the VE actually understood the question to mean that Baylis could

perform *no* overhead reaching and answered accordingly.  *See* Tr. 551 (VE testifying at

the second hearing that five professions—information clerk, usher, host, call-out operator,

and surveillance system monitor—were available in significant numbers in the local

economy to someone who "could perform occasional use of the right upper extremity,

reaching, handling, fingering, [and] *no* overhead [reaching]" (emphasis added)).  Thus,

the ALJ's question accurately conveyed Baylis's limitations to the VE, and the ALJ was

entitled to rely upon the VE's testimony concerning whether a significant number of jobs

existed that Baylis could perform.  Accordingly, the ALJ's disability determination was

supported by substantial evidence.

### 3.  The ALJ's Reasoning

In his third and final objection the R&R, Baylis argues that the ALJ failed to

comply with Third Circuit precedent by not "provid[ing] reasons why probative evidence

was rejected."  Specifically, Baylis contends that the ALJ ignored "nearly a year's worth

of medical evidence" by Dr. Anakwe dating from November 2006 to September 2007 that

documents Baylis's "deteriorating condition."  Pl.'s Objections at 2–3.  He states that Dr.

Anakwe's notes demonstrate a "severely limited range of motion, muscle spasms,

tenderness upon palpitation[,] and complaints of numbness."  *Id.* at 3.

The ALJ does not have to credit every piece of evidence, but she "must consider

all the evidence and give some reason for discounting the evidence she rejects."  *Diaz v.

Comm'r of Soc. Sec.*, 577 F.3d 500, 505–506 (3d Cir. 2009).  Here, the ALJ explicitly

considered Dr. Anakwe's reports twice in the second hearing decision.  First, she notes

that "[Dr. Anakwe's reports] show muscle strength to be 5/5, except for one occasion,[5]

and show that the claimant . . . continued to receive the same conservative treatments and

physical therapy."  Tr. 35.  Second, she observed that "the handwritten progress notes

---

[5] Dr. Anakwe actually notes two occasions when Baylis's muscle strength is rated
4/5: September 4, 2007, Tr. 439; and January 18, 2007, Tr. 446.

from Dr. Anakwe . . . mostly say that the claimant's upper extremity strength is 5/5, and do not go into any great detail about the upper extremity impairments."  Tr. 36.

Thus, "[w]hile ALJ Lenzi did not discuss and refute every note from twelve particular visits with Dr. Anakwe, it is clear that ALJ Lenzi reviewed the record as a whole, including the progress notes documenting plaintiff's symptoms."  R&R at 25.  To the extent that Dr. Anakwe's notes record Baylis's subjective complaints, the ALJ was entitled to discount those subjective reports for the reasons stated earlier.  Moreover, to the extent that Dr. Anakwe's notes document a "deteriorating condition," ALJ Lenzi credits them: she reduced Baylis's RFC from medium to light work because of his "degenerative disease . . . documented in late 2006 and early 2007,"[6] Tr. 35; and discounted the notes of Dr. Yankelevich because of Dr. Anakwe's report, Tr. 35–36.  In sum, ALJ Lenzi's decisions demonstrate a careful consideration of Dr. Anakwe's notes and the ALJ did not commit error by failing to address every notation in Dr. Anakwe's twelve progress reports.  *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (holding that an ALJ need not reference every relevant treatment note).

_____

[6] In making this determination, the ALJ does not explicitly state which medical evidence she is relying upon, but it appears that she was referring to the notes of Dr. Anakwe or the records of Dr. Hutt because those were the only medical evidence during this time period that addressed Baylis's degenerative condition.  *See* Tr. 3–4 (list of medical records).  Dr. Anakwe referred Baylis to Dr. Hutt, *see* Tr. 442, and notes the results of Dr. Hutt's MRI in his three subsequent progress notes, *see* Tr. 439–441.  Therefore ALJ Lenzi modified Baylis's RFC either because of Dr. Anakwe's notes, or because of the MRI that Dr. Anakwe ordered and incorporated into his notes.

**IV. Conclusion**

For the reasons stated above, the Commissioner's determination that Baylis was not disabled within the meaning of the SSA during the period January 30, 2002 through April 28, 2009 is supported by substantial evidence.  Accordingly, defendant's motion to alter or amend judgment will be granted, the R&R will be approved and adopted, and the ALJ's decision will be affirmed.[7]   An appropriate order follows this opinion.

---

[7] In addition, in light this opinion's ruling on defendant's Rule 59(e) motion and its denial of Baylis' other claims, Baylis's motion for attorney's fees will be dismissed as moot.